IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA MARRAH, | : | |
| Plaintiff, | : | Case No. 2:01-cv-1120 |
| v. | : | Judge Holschuh |
| LARRY BOORD, et al., | : | Magistrate Judge Kemp |
| Defendants. | : | |
| | : | |

**Memorandum and Order**

Plaintiff Patricia Marrah brings this action against Defendants pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001et seq. ("ERISA"), seeking a distribution of her employee retirement funds.[1]  This matter is currently before the Court on Plaintiff's motion for summary judgment.  (Doc. # 72).

**I. Background**

    **A.  Procedural History**

Plaintiff is a retired employee of Associates in Central Ohio Obstetrics & Gynecology, Inc. ("ACOOG"), and is a participant in ACOOG's Pension and 401(k) Plans ("Plans").  (Amended Complaint at ¶ 1).  The Plans are subject to the terms of ERISA.  (Id. at ¶ 5).

After exhausting her remedies under the terms of the Plans, Plaintiff brought the current action in this Court asserting her rights under ERISA, the terms of the Plans, and state law.  (Id. at ¶¶ 20-24).  Plaintiff named as defendants: Larry Boord and his business, Boord & Associates ("Boord Defendants"); the Trustees of the Pension Plan and the 401(k) Plan ("Trustee

---

[1]As will be discussed *infra*, all other claims have been dismissed.

Defendants"); as well as the Pension Plan and the 401(k) Plan ("Plan Defendants").

Following this Court's resolution of Defendants' motions for judgment on the pleadings, only Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) seeking an order determining the valuation date for her retirement benefits and for a distribution of those retirement benefits (Count I) and her claim under 29 U.S.C. § 1132(a)(2) seeking restitution to the Plans and their participants for losses attributable to Defendants' alleged breach of their fiduciary duty to diversify the Plans (Count II) remained pending. Memorandum and Order (December 18, 2002); Memorandum and Order (April 17, 2003).

Thereafter, Plaintiff voluntarily dismissed, with prejudice, her claims against the Trustee Defendants. Stipulation and Order (May 17, 2004). On June 2, 2003, the Boord Defendants moved for summary judgment with respect to Plaintiff's failure to diversify claim (Count II). This Court granted the Boord Defendant's motion concluding the Plaintiff's claim of failure to diversify, asserted pursuant to § 1132(a)(2), was without merit. Therefore, the only claim remaining in this case is Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) seeking an order determining the valuation date for her retirement benefits and for a distribution of those benefits (Count I).

**B. Facts**

Plaintiff retired from ACOOG in July of 2000. (Am. Compl. at ¶ 8; Deposition of Patricia Marrah at p. 17). According to Plaintiff, at the time of her retirement, she consulted with the Boord Defendants about obtaining distributions from the Plans and rolling those retirement benefits over into an Individual Retirement Account ("IRA"). (Am. Compl. at ¶ 9; Marrah Dep. at pp. 17, 33). Plaintiff also requested that the assets in her retirement accounts be

2

conservatively invested. (Marrah Dep. at pp. 33-35; Affidavit of Patricia Marrah at ¶ 4). Plaintiff met with the Boord Defendants in September of 2000 to fill out the necessary paperwork to effect a distribution from the Plans. (Am. Comp. at ¶ 14; Marrah Dep. at pp. 18-19).

The Boord Defendants told Plaintiff that they would get the work done "as soon as possible." (Boord Dep. at p. 42). Plaintiff contends that, based on her prior work experience with the Boord Defendants, she expected to receive a distribution from the Plans "within a short time." (Marrah Aff. at ¶ 7; Am. Comp. at ¶ 11). Plaintiff specifically alleges that the Boord Defendants indicated that they would set up the IRA account for Plaintiff and that she could expect quarterly distributions from that IRA beginning in October of 2000. (Am. Comp. at ¶ 12; Marrah Aff. at ¶ 8). According to Plaintiff, however, no action was ever taken to effectuate the distribution from the Plans despite her repeated inquiries and requests. (Am. Comp. at ¶¶ 15-16; Marrah Dep. at pp. 36-37).

Plaintiff alleges that she had made it clear that she wanted to receive her distribution from the Plans before the Presidential election in November 2000. (Marrah Dep. at pp. 33-34). Frustrated with the Boord Defendants' lack of action, in November 2000, Plaintiff contacted the Boord Defendants about obtaining a different custodian to handle her IRA. (Marrah Dep. at pp. 19-20; Marrah Aff. at ¶ 9; Deposition of Larry Boord at pp. 45-46).

The Boord Defendants contend that, due to Plaintiff's November 2000 notification that she was changing the custodian for her IRA, Plaintiff's request for distribution was revoked and the process had to start over. (Boord Dep. at pp. 43, 115-116). The Boord Defendants also explained that Plaintiff's statement, *i.e.,* that she wanted to change the custodian for her IRA,

"made it impossible to make a distribution until such time as she designated a new IRA custodian." (Id. at p. 116).

Plaintiff alleges that, in January 2001, the Boord Defendants notified her that her distribution would be based upon the December 2000 valuation of her retirement accounts; a significant decrease from earlier valuations. (Marrah Aff. at ¶ 13). Plaintiff rejected that proposed valuation. (Marrah Aff. at ¶ 15). Then, in April of 2001, the Boord Defendants allegedly offered to distribute Plaintiff's retirement accounts to her either at their current value or their value as of December 31, 2000. (Am. Comp. at ¶ 18; Marrah Aff. at ¶ 17). Again, Plaintiff rejected the proposal because, due to investment losses during the intervening months, the balances of Plaintiff's accounts in both December of 2000 and April of 2001 were significantly lower than the balances of those accounts in September 2000 when Plaintiff had initially requested the distribution.[2] (Am. Comp. at ¶ 19; Marrah Dep. at pp. 32-33; Exhibits A, B, C, and D, attached to Marrah Aff.).

---

[2]According to Plaintiff, her account balances in the Plans were as follows:

    September 30, 2000:  $250,333.34
    December 31, 2000:  $226,417.29
    April 2001:  $209,077.53

(Marrah Aff. at ¶ 14).

## II. Discussion

### A. Standard[3]

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc.,

---

[3] Because Plaintiff seeks to enforce her rights under the terms of the Plans, this Court will apply the ordinary summary judgment standard as opposed to the procedure set forth by the Sixth Circuit in Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir. 1998). See Beeler v. Western Southern Life Ins. Co., 247 F. Supp.2d 913, 921 n.5 (S.D. Ohio 2002).

477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to

6

establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

### B. Application

As was discussed *supra*, the only claim remaining in this case is Plaintiff's claim, asserted pursuant to 29 U.S.C. § 1132(a)(1)(B), seeking an order determining the valuation date

7

for her retirement benefits and for a distribution of those benefits (Count I).[4] (Am. Compl. ¶¶ 25-27). With respect to the Plans at issue in this case, a participant becomes eligible for a distribution from the Plans on, *inter alia*, the employee's "Early Retirement Date," "Normal Retirement Date," or "Late Retirement Date." (Pension Plan, at Article VI, § 6.1, attached as Exhibit 1 to Plaintiff's Appendix; 401(k) Plan, at Article VI, § 6.1, attached as Exhibit 3 to Plaintiff's Appendix). Plaintiff reached her "Normal Retirement Date," and therefore became eligible to retire from ACOOG, in February 2000.[5] However, Plaintiff decided to continue working for ACOOG until July 2000. Thus, pursuant to the terms of the Plans, August 1, 2000 was designated as Plaintiff's "Late Retirement Date." (Pension Plan, at Article I, § 1.36; 401(k) Plan, at Article I, § 1.36).[6] Plaintiff contends that, pursuant to the terms of the Plans, her

---

[4]Section 1132(a)(1)(B) of ERISA provides:

> (a) Persons empowered to bring a civil action
> A civil action may be brought -
>
> (1) by a participant or beneficiary -
>     \*        \*        \*
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....
> 29 U.S.C. § 1132(a)(1)(B).

[5]Pursuant to the terms of the Plans, "Normal Retirement Date" is the date the employee turns 65 years old. (Pension Plan Adoption Agreement, at D10, attached as Exhibit 2 to Plaintiff's Appendix; 401(k) Plan Adoption Agreement, at D10, attached as Exhibit 4 to Plaintiff's Appendix). Plaintiff turned 65 years old in February 2000. (Marrah Aff. at ¶ 3).

[6]The Summary Plan Description for both Plans provide: "Your Late Retirement Date is the first day of the month coinciding with or next following the date you choose to retire, after first having reached your Normal Retirement Date." (Pension Plan Summary Plan Description, at §V, ¶ 2, attached as Exhibit 5 to Plaintiff's Appendix; 401(k) Plan Summary Plan Description, at §V, ¶ 2, attached as Exhibit 6 to Plaintiff's Appendix). As was discussed, Plaintiff decided to retire in July 2000. (Marrah Dep. at p. 17).

accounts should be valued as of her Late Retirement Date or, at the very latest, September 2000. Defendants, however, valued Plaintiff's accounts in the Plans as of April 2001. (Marrah Aff. at ¶ 21).

The Plan Defendants do not address the appropriate valuation date for Plaintiff's accounts in the Plans. Instead, the Plan Defendants argue that, to the extent the valuation of Plaintiff's accounts results in a loss to the Plans, the Boord Defendants should bear the loss rather than the Plans.[7] However, as was discussed *supra*, the only issue remaining in this case is the appropriate valuation date for Plaintiff's retirement benefits. Therefore, this Court will not address who should bear any resulting loss to the Plans following a valuation of Plaintiff's accounts therein.[8] Because the Plans in this case are governed by ERISA, the Court will apply federal common law rules of contract interpretation in making a determination with respect to the appropriate valuation date for Plaintiff's accounts. Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998). To that end, the Court will interpret the Plans at issue in this case "according to their plain meaning, in an ordinary and popular sense." Cassidy v. Akzo Nobel Salt, Inc., 308 F.3d 613, 617-18 (6th Cir. 2002)(quoting Perez, 150 F.3d at 556). In applying a "plain meaning" analysis, the Court must "give effect to the unambiguous terms of an ERISA plan." Perez, 150 F.3d at 556 (quoting Lake v. Metropolitan Life Ins. Co., 73 F.3d 1372, 1379

---

[7]The Plan Defendants argue that the Boord Defendants were the Plans' administrators and that, therefore, they may be held personally liable for any breach of fiduciary duty. This Court notes, however, that there is some dispute as to whether the Boord Defendants were in fact the administrators for the Plans.

[8]This Court renders no opinion as to whether or not the Plans would have a cause of action against the Boord Defendants if the valuation of Plaintiff's accounts, as directed by this Court, causes a loss to the Plans.

(6th Cir. 1998)).

The Plan Defendants do not argue that the language contained in either Plan, or Summary Plan Description, is ambiguous with respect to the valuation date of an employee's account(s). Nor do the Plan Defendants offer an interpretation of the Plans that would be contrary to Plaintiff's interpretation.

As noted by Plaintiff, the Plans at issue in this case provide, in relevant part:

> Every Participant may terminate his employment with the Employer and retire for the purposes hereof on or after his Normal Retirement Date.... Upon such Normal Retirement Date ... all amounts credited to such Participant's Combined Account <u>shall become distributable</u>. However, a Participant may postpone the termination of his employment with the Employer to a later date, in which event the participation of such Participant in the Plan, including the right to receive allocations pursuant to 4.3, shall continue <u>until</u> his Late Retirement Date. <u>Upon a Participant's Retirement date, or as soon thereafter as is practicable, the Administrator shall direct the distribution of all amounts credited to such Participant's Combined Account in accordance with Section 6.5</u>.

(Pension Plan, at Article VI, § 6.1(emphasis added); 401(k) Plan, at Article VI, § 6.1 (emphasis added)). Moreover, the Summary Plan Description for both Plans provides in relevant part: "On your Late Retirement Date, you will be entitled to 100% of your account balance. Actual benefit payments will begin as soon as practicable following your Late Retirement Date." (Pension Plan Summary Plan Description, at §V, ¶ 2; 401(k) Plan Summary Plan Description, at § V, ¶ 2).

The language of these provisions make it clear that, on an employee's retirement date, the employee becomes eligible for a distribution from the Plans. If a participant is eligible for a distribution, it only makes sense that the employee's account(s) must be assigned a particular value at that time. More importantly, the Plans specifically state that if an employee decides to

continue working for ACOOG past the Normal Retirement Date, the employee may continue as a participant in the Plans <u>until</u> the Late Retirement date. This suggests that, after an employee's Late Retirement Date, the employee is no longer a participant in the Plans, is not entitled to allocations pursuant to section 4.3 of the Plans and, therefore, the valuation date for an employee's account(s) should be on or before the Late Retirement Date.

Moreover, while the Plans anticipate possible delays in the actual distribution of the accounts, there does not appear to be any reason the account should not be valued as of the retirement date. Again, the Court notes that the Plan Defendants have not offered any evidence to support a contrary interpretation of the Plan language. This Court therefore concludes that, based on the language of the Plans, Plaintiff's accounts in the Plans should be valued as of her Late Retirement Date.

**WHEREUPON**, Plaintiff's motion for summary judgment (Doc. # 72) is **GRANTED**. The Plan Defendants shall value Plaintiff's accounts as of her Late Retirement Date and shall distribute those accounts accordingly.

**IT IS SO ORDERED.**

<u>June 28, 2005</u>                                                             <u>/s/ John D. Holschuh</u>
                                                                                         John D. Holschuh, Judge
                                                                                         United States District Court